**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 2, 2011

Lyle W. Cayce
Clerk

No. 10-10964

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ANTONIO DEERIC SCOTT,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Antonio DeEric Scott pleaded guilty to one count of being a felon in possession of a firearm, for which he was sentenced to 63 months' imprisonment and three years' supervised release. He appeals the district court's adding three criminal-history points to his base offense level for three prior "crime of violence" sentences that were not already counted because they were grouped with a fourth sentence. Specifically, Scott argues that U.S.S.G. § 4A1.1(f)[1] requires adding points to uncounted "crimes of violence" rather than to uncounted sentences. According to Scott, the four convictions and sentences at issue constituted only one "crime of violence" because they all sprang from a "single

_____

[1] All references to the Sentencing Guidelines are to the 2008 version unless otherwise noted.

No. 10-10964

criminal episode." Scott also challenges his sentence as unreasonable because two criminal-history points were added because the instant offense occurred less than two years after he served a sentence of imprisonment under § 4A1.1(e). Scott argues that even though the version of the Guidelines then in effect required this "recency" enhancement, the sentence imposed was not reasonable because this factor has been shown to be an "irrelevant and improper" factor for determining recidivism.

We affirm the district court on both grounds.

## I

Scott was arrested on July 2, 2008, after a police officer conducting a routine traffic stop of Scott's vehicle saw a firearm under the driver's seat and subsequently determined that Scott had prior felony convictions. Scott was indicted on November 19, 2008, on charges of being a felon in possession of a firearm and of being a felon in possession of ammunition. Scott pleaded guilty in September 2009 to the firearm charge, and the ammunition charge was dropped.

The Presentence Report ("PSR") calculated that Scott had 8 base criminal-history points and 2 additional "recency" points under U.S.S.G. § 4A1.1(e) for committing the instant offense within two years of release from imprisonment, for a total criminal-history score of 10. Three of Scott's criminal-history points were for a 1996 shooting spree in which Scott shot in the direction of four people. As a result of the shooting incident, Scott was charged with and sentenced for four counts of deadly conduct. Under U.S.S.G. § 4A1.1(a)(2), the Guidelines treated and grouped these multiple convictions and sentences as one conviction, as there was no intervening arrest. The PSR calculated a base offense level of 14 and deducted 2 levels for acceptance of responsibility, for a total offense level of 12.

No. 10-10964

The Government filed various objections to the PSR's calculation of Scott's advisory Guideline sentence. The PSR was subsequently amended to raise Scott's base offense level to 20 on the ground that U.S.S.G. § 2K2.1(a)(4)(A) provides for a base offense level of 20 where a defendant has a prior conviction for a crime of violence—in this case, Scott's deadly-conduct convictions. The amended PSR also raised Scott's criminal-history score under § 4A1.1(f) on the ground that three of Scott's prior sentences for deadly conduct were not already counted because they were considered a single sentence and grouped with the fourth deadly conduct conviction under § 4A1.2(a)(2), and each therefore warranted an additional criminal-history point, for a total of 13 criminal-history points. Scott lost his 2-point deduction for acceptance of responsibility due to intervening conduct, including testing positive for cocaine.[2]

At sentencing on September 16, 2010, the district court granted a one-level reduction in Scott's base offense level to 19 for his substantial assistance to law enforcement. At the time of Scott's sentencing, the Sentencing Commission had submitted a proposed Guidelines amendment to Congress that would eliminate the two-point "recency" enhancement. Scott argued at sentencing that the recency points should be eliminated from his criminal-history score, and that a sentence based upon those points was substantively unreasonable because recency failed to predict recidivism and had been repudiated by the Sentencing Commission. The district court rejected this argument and determined that Scott had an offense level of 19 and a criminal-history category of VI. Faced

---

[2] A defendant must be sentenced under the version of the Guidelines in effect at sentencing, unless doing so would violate the Ex Post Facto Clause of the Constitution. U.S.S.G. § 1B1.11. Scott was sentenced and the three addenda to the PSR were submitted after the 2009 version of the Guidelines went into effect, and yet the addenda do not explain why Scott was nevertheless sentenced under the 2008 version of the Guidelines. It is of no moment, however, because the 2008 and 2009 versions of the Guidelines provisions at issue in this appeal are identical. *See* U.S.S.G. § 4A1.1(e)–(f) (2008, 2009).

No. 10-10964

with an advisory Guidelines range of 63 to 78 months, the district court sentenced Scott to 63 months' imprisonment.

Scott timely appealed.

## II

Under *Gall v. United States*, our process of reviewing a sentence is bifurcated.  552 U.S. 38 (2007).  We first determine whether the district court committed any significant procedural error, such as: "(1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range." *United States v. Armstrong*, 550 F.3d 382, 404 (5th Cir. 2008).  Under this first step, "we review the district court's interpretation or application of the sentencing guidelines *de novo*, and its factual findings for clear error."  *United States v. Gutierrez–Hernandez*, 581 F.3d 251, 254 (5th Cir. 2009) (citing *Armstrong*, 550 F.3d at 404).

Second, "if the district court's decision is procedurally sound, we consider the substantive reasonableness of the sentence, considering the factors in 18 U.S.C. § 3553(a)." *Id.* (citing *Armstrong*, 550 F.3d at 404). "Appellate review for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) (citation and internal quotation marks omitted). We apply an abuse-of-discretion standard of review, and within-Guidelines sentences enjoy a presumption of reasonableness. *Gutierrez–Hernandez*, 581 F.3d at 254. "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a

No. 10-10964

clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (citation omitted).

Scott makes one procedural challenge and one substantive challenge to his sentence, and we address each in turn.

## A.     Awarding Three Criminal-History Points Under § 4A1.1(f)

Scott had four previous deadly-conduct convictions, all stemming from a single shooting spree in 1996.  Each conviction earned a five-year sentence to run concurrent to the others, and the sentences were all imposed on March 30, 1998.  The amended PSR determined that the four sentences counted as a "single sentence" under U.S.S.G. § 4A1.2(a)(2), which provided that:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . . . If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.  Count any prior sentences covered by (A) or (B) as a single sentence.  *See also* § 4A1.1(f).

Section 4A1.1(f) provided:

> Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was counted as a single sentence, up to a total of 3 points for this subsection.

Sections (a), (b), and (c) referenced by § 4A1.1(f) provided for adding criminal-history points for "each prior sentence" that fall within various categories.  *See* U.S.S.G. § 4A1.1(a)–(c).

The amended PSR determined that three additional points should be added under § 4A1.1(f) for the three deadly-conduct sentences that did not receive their own criminal-history points because they were grouped with the fourth deadly-conduct sentence under § 4A1.2(a)(2).  Scott does not appeal the § 4A1.2(a)(2) determination that the four deadly-conduct sentences were properly grouped as a "single sentence" for purposes of the Guidelines.  Rather,

he argues that the district court improperly calculated the applicable Guidelines range when it interpreted § 4A1.1(f) to require additional criminal-history points for individual, uncounted "crime of violence" sentences rather than for the broader "criminal episode" in which the crimes of violence occurred. Scott argues that the plain language of § 4A1.1(f) focuses on whether the prior *crime of violence* did not receive any points, not whether the prior *sentence* received any points. From here, Scott argues that "crime of violence" really means "criminal episode"—a term found nowhere in the Guidelines—and that his 1996 shooting spree was only one "criminal episode" despite the fact that it resulted in four separate charges, convictions, and sentences. Scott argues that his "crime of violence"—in his eyes, the entire shooting spree—was already counted in his criminal-history points and that he should not have been assessed three additional points for the three grouped and otherwise-uncounted deadly-conduct sentences.

We first note that neither the appellant nor the appellee provides a single case that interprets the 2008 version of § 4A1.1(f) to explain how courts are to assess criminal-history points for prior sentences. While one other court of appeals has stated in dicta that courts must award additional criminal-history points under this section to otherwise-uncounted prior offenses committed on the same occasion, *see King v. United States*, 595 F.3d 844, 850 n.3 (8th Cir. 2010), we are squarely faced with deciding this apparently *res nova* issue of law. Nevertheless, we have no trouble deciding that Scott's appeal fails for several reasons.

First, Scott's argument that § 4A1.1(f) focuses on the "crime of violence" —that is, "criminal episode"—that is uncounted rather than the sentence is clearly at odds with the remainder of § 4A1.1(f)'s text. The second half of § 4A1.1(f) loops back to focus on the sentence imposed for the prior crime, explaining that section (f) points are added "because such sentence was counted

as a single sentence" and did not receive points under § 4A1.1(a)–(c). Common sense dictates that this portion of the sentence refers back to uncounted *sentences* for crimes of violence rather than uncounted "crimes of violence" themselves. Assuming that there is a difference between an uncounted sentence and an uncounted crime of violence (as argued by Scott), this language only makes sense when explaining why the prior sentence did not receive points.

Second, Scott's argument that the definition of "crime of violence" itself provides no guidance as to what conduct constitutes multiple crimes of violence fails. A "crime of violence" is defined as a certain type of "offense," a term that is itself defined by the Guidelines as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. §§ 4B1.2(a), 1B1.1 cmt. n.1(H). This conviction-specific definition of "offense"—and therefore also of "crime of violence"—is contrary to Scott's broad "criminal episode" definition of "crime of violence." Again, Scott provides no legal support for his argument that "crime of violence" means "criminal episode." In this case, Scott was convicted of four counts of deadly conduct. He therefore committed four deadly-conduct offenses, that are considered four separate crimes of violence, each with its own imposed sentence under the Guidelines.

Scott's remaining arguments are likewise unconvincing. He argues that commentary note 6 to § 4A1.1 provides an example of how to apply section (f) and which defines the rule in his case. The example in commentary note 6 is of two robberies committed on different occasions, but the sentences for the robberies were treated as a single sentence under § 4A1.2(a)(2)(B) because they were imposed on the same day. U.S.S.G. § 4A1.1 cmt. n.6. In the example, the second robbery is assessed a point under § 4A1.1(f) because it was not assessed points under § 4A1.1(a)–(c). *Id.* Scott argues that the commentary example supports his argument that his deadly-conduct sentences should not have been

assessed points under § 4A1.1(f), because they did not occur on different occasions. Scott's argument, however, misses the point as to *why* the sentences receive a point under section (f). This example illustrates how to apply the enhancement to sentences considered a single sentence under § 4A1.2(a)(2)(B) because they were *imposed on the same day*. It does not speak to sentences considered a single sentence under § 4A1.2(a)(2)(A) because they were contained in the same charging instrument, nor does it state that section (f) points can only be assessed to sentences for conduct that occurred on different days. Furthermore, the Supplement to Appendix C explaining the Guidelines' amendments provides its own, more general example of how to apply § 4A1.1(f). In the Supplement's example, it simply states that the prior sentences were considered a single sentence and therefore the second sentence deserved a point under section (f), and does not state whether the prior crimes occurred on the same or different days. *See* U.S.S.G. Supp. to app. C, amend. 709.

Scott also points to the 2006 version of § 4A1.1(f), which *did* prohibit adding additional criminal-history points for offenses that occurred on the same day, as evidence that his additional deadly-conduct offenses should not have been assessed criminal-history points. *See* U.S.S.G. § 4A1.1(f) (2006) ("Provided that this item does not apply where the sentences are considered related because the offenses occurred on the same occasion."). Of course, this language was deleted in the 2007 version and was not a part of the 2008 Guidelines under which Scott was sentenced. Scott's argument that this deletion was not intended to be substantive is unavailing because it is contrary to the stated purposes of the amendment: first, to simplify the calculation of the crime-of-violence enhancement; and second, to promote consistency in the application of the Guidelines. U.S.S.G. Supp. to app. C, amend. 709 (2008). Under Scott's argued interpretation of § 4A1.1(f) and definition of "crime of violence" as a "single criminal episode," criminals with multiple and different prior offenses would not

be assessed criminal-history points for their prior conduct simply because the prior offenses occurred at the same time as other, already-counted offenses. Such a construction does not further uniformity in sentencing for similar criminal conduct.

We therefore affirm the district court's adding three criminal-history points for Scott's grouped and otherwise-uncounted deadly-conduct offenses.

## B.    Two-Point § 4A1.1(e) "Recency" Enhancement

Because the version of the Guidelines then in effect called for a two-point "recency" enhancement to Scott's criminal-history score and because Scott was sentenced within the advisory Guidelines range, his sentence enjoys a presumption of reasonableness. *Gutierrez–Hernandez*, 581 F.3d at 254. By the time Scott was sentenced on September 16, 2010, however, the Sentencing Commission had submitted an amendment to the Guidelines to Congress that would eliminate the "recency" points in § 4A1.1(e). The amendment became effective November 1, 2010, and was not made to be retroactive. *See* U.S.S.G. Supp. to app. C, amend. 742; U.S.S.G. § 1B1.10(a), (c) (2010). The amendment admittedly does not apply to Scott. Scott argues that because the Sentencing Commission determined that the "recency" enhancement "only minimally improves" the Guidelines' ability to predict the defendant's risk of recidivism, the enhancement does not further any of the factors set forth in 18 U.S.C. § 3553(a). *See id.* Therefore, Scott argues that his within-Guidelines sentence incorporating the enhancement gave significant weight to an irrelevant or improper factor such that his sentence is substantively unreasonable, and that he should have received a two-point downward variance.

Scott made this argument about the recency enhancement at sentencing, and the district court rejected it, explaining that the Guidelines are discretionary and that in Scott's particular case there was no reason to downwardly depart by an additional two criminal-history points. Regardless of

the policy reasons undergirding the Sentencing Commission's decision to eliminate § 4A1.1(e) recency points, one factor the district court was bound to consider under § 3553(a) was the applicable Guideline range then in effect.  18 U.S.C. § 3553(a)(4).  There is no evidence that, given Scott's extensive criminal history, the district court abused its discretion in choosing to impose a within-Guidelines sentence and in refusing to downwardly depart from the Guidelines by two criminal-history points.  Scott has not shown that his sentence was substantively unreasonable, *see Gall*, 552 U.S. at 51, "nor has he rebutted the presumption of reasonableness that attaches to his within-[G]uidelines sentence." *United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010) (citation omitted).

## III

For the foregoing reasons, we affirm Scott's sentence.

AFFIRMED.