# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 27, 2022

Lyle W. Cayce
Clerk

No. 19-50855

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MICHAEL DEWAYNE DENNIS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:18-CR-1199-1

Before HIGGINBOTHAM, HAYNES, and WILSON, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

A jury found Michael Dennis guilty of conspiracy to possess with intent to distribute more than 100 kilograms of marijuana. Dennis now appeals his conviction and sentence.

**I.**

The Department of Homeland Security began investigating Michael Dennis after a number of accomplices described delivering marijuana to him. On April 30, 2018, DHS agents installed pole cameras directed at the front

and back of Dennis's properties in Houston, Texas. Until July 9, 2018, the cameras captured video of incidents similar to the deliveries described by cooperating defendants Ray Trevino and Ausencio Garcia-Herrera. On June 24 and July 9, the video showed boxes being unloaded from pickup trucks into the garage, Dennis going from the garage to his house and returning with a bag, trucks departing, and Dennis moving the boxes from the garage to his house. The video also showed Jonathan Ray Alaniz delivering boxes to the garage twice; Houston police stopped Alaniz after he left the property, seizing approximately $5,000 and thirty pounds of marijuana.

On June 20, 2018, Dennis was indicted for conspiracy to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a), (b)(1)(B), and 846. The indictment included notice of a demand of forfeiture. On July 11, 2018, law enforcement executed an arrest warrant for Dennis and a search warrant for his property. During a forced entry into his home, an agent shot Dennis on seeing him with a firearm. After his arrest, agents found an AR-15 rifle and an AK-47-type pistol with a drum magazine, 111.85 kilos of marijuana, nineteen firearms, $197,313 cash, money counters, scales, and ledgers showing prices, weights, and names for hydroponic marijuana sales for $800 to $1,000 per pound on his property.

Dennis's first retained counsel entered an appearance on August 3, 2018. Pretrial motions were due by September 16, 2018. Prior to trial, seven different lawyers represented Dennis; other than motions to substitute counsel or for continuances, counsel filed no pretrial motions. The district court granted nine continuances and set three plea hearings, then denied a motion to suppress as untimely.

Dennis was convicted in a two-day jury trial. After accepting the verdict, the district court held a hearing on forfeiture and sentenced Dennis to 216 months in prison and five years' supervised release. The district court

also ordered Dennis to forfeit his weapons, boat, Houston properties, and $7,200,000 as proceeds of the offense. Dennis timely appeals.

## II.

Dennis challenges the denial of three pre-trial motions: leave to file untimely motions to suppress, its merits, and a motion for a continuance. We address each in turn.

## A.

Trial counsel filed their notice of appearance on August 9, 2019. At an August 13 docket call the district court told counsel that the trial would proceed on September 11. On August 29, 2019, Dennis moved to suppress the video surveillance and evidence from the search of his property. On September 5, 2019, Dennis moved for leave to file the motions to suppress, nearly a year after the due date of September 16, 2018 for pretrial motions. At the pretrial conference, the district court addressed the lateness of the motions, heard counsel's argument, denied the motions, and declined to suppress any evidence. Dennis contends that the district court abused its discretion by denying him leave to file an untimely motion to suppress.

We review the district court's denial of a motion to suppress as untimely for abuse of discretion.[1] A motion to suppress that is filed after the deadline for pretrial motions while untimely, may be considered if the party shows good cause.[2] Although we have "not ruled on the standard of review of a district court's finding of lack of good cause under Rule 12(c)(3),"[3] in

---

[1] *United States v. Oliver*, 630 F.3d 397, 410 (5th Cir. 2011).

[2] FED. R. CRIM. P. 12 (c)(3); *United States v. Williams*, 774 F. App'x 871, 876 (5th Cir. 2019) (per curiam).

[3] *Williams*, 774 F. App'x at 876.

*Williams* this Court stated that a showing of good cause requires a showing of cause and prejudice.[4]

Dennis has shown neither cause nor prejudice. For the year prior to his trial, Dennis had at least seven different lawyers. Here, counsels' appearance a month before trial cannot justify the late filings.[5] Prior counsel could have moved to suppress as they were aware of the surveillance.[6] Similarly, the ongoing plea negotiations did not prevent and do not justify prior counsels' failure to file motions to suppress.[7] Dennis has not shown that he was prejudiced by the denial of leave to file his untimely motions. The district court was familiar with the facts and legal issues, heard counsels' argument, and gave oral rulings on them before trial.[8] The district court did not abuse its discretion in denying Dennis leave to file his untimely motion to suppress.

---

[4] *Id.* at 876-77; *see Davis v. United States*, 411 U.S. 233, 243–44 (1973); *United States v. Fry*, 792 F.3d 884, 888 (8th Cir. 2015) ("Under Rule 12(c)(3), as amended December 1, 2014, a court may consider an issue not timely raised under Rule 12(b)(3) only upon a showing of 'good cause,' which requires a showing of cause and prejudice."); 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 194 (5th ed. 2019).

[5] *See United States v. Gulley*, 780 F. App'x 275, 283 (6th Cir. 2019) (change in counsel alone not sufficient to constitute good cause for late filing); *United States v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010).

[6] *Williams*, 774 F. App'x at 877; *see United States v. Knezek*, 964 F.2d 394, 398–99 (5th Cir. 1992); 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 194 (5th ed. 2019).

[7] *See United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) (belief that motion to suppress would not be necessary due to planned plea did not excuse late filing).

[8] *Williams*, 774 F. App'x at 874, 877.

No. 19-50855

## B.

Dennis contends that the district court erred in denying his motion to suppress. When a pretrial motion is denied as untimely, we review the denial of the motion for plain error.[9] To show plain error, Dennis must show a forfeited error that is clear or obvious, which affects his substantial rights.[10] With that showing, we have the *discretion* to correct the error, but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.[11]

## 1.

Dennis argues that the pole cameras were an unreasonable intrusion into his privacy under the Fourth Amendment. "[O]fficial intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause."[12] However, a defendant cannot assert a privacy interest in information which he "voluntarily conveyed to anyone who wanted to look."[13] Dennis relies on *United States v. Cuevas-Sanchez* to argue that the fencing around his property established his privacy interest, but given that one can see through his fence and that the cameras captured what was open to public view from the street, this is not a clear or obvious application of our precedent.[14] Dennis argues the prolonged and continuous

---

[9] *United States v. Vasquez*, 899 F.3d 363, 373 (5th Cir. 2018), *as revised* (Aug. 24, 2018).

[10] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[11] *Id.*

[12] *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018).

[13] *Id.* at 2215 (citation omitted).

[14] *See United States v. Cuevas-Sanchez*, 821 F.2d 248, 250–51 (5th Cir. 1987); *Evans v. Lindley*, No. 21-20118, 2021 WL 5751451, at *5 (5th Cir. Dec. 2, 2021) (per curiam); *United States v. Beene*, 818 F.3d 157, 162 (5th Cir. 2016) (noting there was no expectation

No. 19-50855

nature of the surveillance violated his Fourth Amendment rights. Although the Supreme Court addressed a form of continuous surveillance in *Carpenter*, unlike cell-site location information, there is nothing inherent in the use of security cameras to cast doubt on their validity.[15] It is rather whether the surveillance invades protected privacy interests. Surveillance of areas open to view of the public without any invasion of the property itself is not alone a violation.[16] All that was surveilled here was from the view from the street, continuously visible to individuals.[17] We do not say that the length of time surveilled is irrelevant, but we find no privacy interest was here invaded—information subject to the daily view of strollers and the community. The legal issues here are not so clear that any error would be plain or obvious.

---

of privacy and that defendant had not posted "no trespassing" signs); *United States v. Moffitt*, 233 F. App'x 409, 411 (5th Cir. 2007) (per curiam) (defendant did not have legitimate expectation of privacy with respect to his driveway and yard). Other circuits have held that similar surveillance does not violate the Fourth Amendment. *See also United States v. Moore-Bush*, 36 F.4th 320 (1st Cir. 2022) (en banc) (eight months of video surveillance with a pole camera trained on a side door, attached garage, drive-way, and portions of the lawn and public street in front of an un-fenced house was not suppressed, court divided on whether this was because it did not violate the Fourth Amendment or because agents had acted in good faith reliance on existing authority); *United States v. Tuggle*, 4 F.4th 505, 513 (7th Cir. 2021) (18 months of video surveillance with three cameras viewing the front of un-fenced Tuggle's home, an adjoining parking area, and another portion of the outside of his house did not invade a reasonable expectation of privacy); *United States v. Houston*, 813 F.3d 282, 287–88 (6th Cir. 2016) (defendant "had no reasonable expectation of privacy in video footage recorded by a camera that was located on top of a public utility pole and that captured the same views enjoyed by passersby on public roads"); *United States v. Vankesteren*, 553 F.3d 286, 290 (4th Cir. 2009) (surveillance cameras on farmer's land did not violate Fourth Amendment).

[15] *Carpenter*, 138 S. Ct. at 2220.

[16] *See California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("[T]he mere fact that an individual has taken measures to restrict some views of his activities [does not] preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.").

[17] *Ciraolo*, 476 U.S. at 213.

Dennis fails to show that the district court clearly erred in not suppressing the video evidence.[18]

### 2.

Dennis also sought to suppress the fruit of the search of his property as relying on stale information, urging that the affidavit did not contain the dates of the cooperating defendants' deliveries of marijuana.

A search warrant may be invalidated upon a showing that the supporting affidavit includes assertions that were deliberate falsehoods or made with reckless disregard for the truth and the remaining portion of the affidavit is insufficient to support a finding of probable cause.[19] It must be shown that the affiant made specific statements that were deliberately false or made in reckless disregard of the truth.[20] It is the defendant's burden to "make[] a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate."[21] Dennis has offered no proof that the affiant deliberately or recklessly falsified statements about the information from cooperating defendants to mislead the court. Although the dates were omitted, the defendants collectively described nineteen deliveries of hundreds of pounds of marijuana taking place over months. And the more recent video evidence showed that Dennis was engaging in the same conduct described, which freshened the

---

[18] *United States v. Prieto*, 801 F.3d 547, 555 (5th Cir. 2015); *United States v. Miller*, 665 F.3d 114, 136 (5th Cir. 2011).

[19] *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Brown*, 298 F.3d 392, 395–96 (5th Cir. 2002).

[20] *Franks*, 438 U.S. at 171–72.

[21] *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995) (citation omitted).

information.[22] Dennis cannot show that the district court plainly erred when it declined to suppress evidence from the search of his property.

## C.

Dennis argues that the district court abused its discretion in denying his final motion for a continuance. We review the denial of a continuance for abuse of discretion.[23] We look to the totality of the circumstances, including:

> (a) the amount of time available; (b) the defendant's role in shortening the time needed; (c) the likelihood of prejudice from denial; (d) the availability of discovery from the prosecution; (e) the complexity of the case; (f) the adequacy of the defense actually provided at trial; and (g) the experience of the attorney with the accused.[24]

From August 2018 to September 2019, the district court granted nine continuances, providing Dennis adequate time to prepare for trial.[25] The shortened amount of time trial counsel had to prepare was of Dennis's making.[26] The district court set the September trial date on June 26, 2019. Dennis retained new counsel in August and counsel undertook the representation knowing the trial date. The evidence was straight-forward and discovery was timely.[27] Dennis concedes that "[t]rial [c]ounsel performed well at trial," and cites no deficiencies in their representation. None of the grounds on appeal address errors attributable to counsel's want of

---

[22] *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984).

[23] *United States v. Walters*, 351 F.3d 159, 170 (5th Cir. 2003).

[24] *Id.*

[25] *United States v. Diaz*, 941 F.3d 729, 740 (5th Cir. 2019) (two continuances); *United States v. Kelly*, 973 F.2d 1145, 1148 (5th Cir. 1992) (two continuances).

[26] *Walters*, 351 F.3d at 170.

[27] *Diaz*, 941 F.3d at 740.

preparation and Dennis has not identified any prejudice from the denial of the continuance.

## III.

## A.

Dennis also moved for limited discovery of the drug quantity information in the presentence reports (PSRs) of cooperating defendants Alex Perez-Orozco, Garcia-Herrera, Trevino, Ibarra-Gonzalez, and Hermilio Garcia-Nunez. The district court denied the motion.

We review the district court's decision to disclose PSR information to a third party for abuse of discretion.[28] "There is a general presumption that courts will not grant third parties access to the presentence reports of other individuals."[29] This presumption is supported by "powerful policy considerations," including the defendant's privacy interest; maintaining confidential information about informants, investigations, and grand jury proceedings; and not chilling the "transmission of information by the defendants."[30] "[O]nly where a 'compelling, particularized need for disclosure is shown should the district court disclose the report.'"[31]

Dennis argues that the need to avoid an unwarranted disparity between his and the other defendants' sentences justifies disclosure. The rub is that a defendant's drug quantity extends only to criminal activity "he was directly involved [in] or that was reasonably foreseeable to him."[32] Dennis

---

[28] *United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir. 1995).

[29] *Id.* (internal quotation omitted).

[30] *Id.*

[31] *Id.* (quoting *United States v. Corbitt*, 879 F.2d 224, 239 (7th Cir.1989)).

[32] *United States v. McClaren*, 13 F.4th 386, 411 (5th Cir. 2021), *cert. denied sub nom. Fortia v. United States*, 142 S. Ct. 1244 (2022).

worked with all of the other defendants to distribute marijuana, while they were responsible only for what they distributed. And unlike the others, Dennis did not cooperate with the investigation. The cooperating defendants were not similarly situated to Dennis.[33] The district court did not abuse its discretion in denying Dennis's request for sentencing information.

## B.

Dennis next challenges the length of his sentence, arguing that the district court miscalculated the drug quantity finding, misapplied the enhancement for possession of a firearm, and erroneously refused to consider the changing laws regarding marijuana. These arguments are without merit.

"Using a bifurcated review process, we first examine whether the district court committed any significant procedural error."[34] "A district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo*, and its factual findings . . . are reviewed for clear error. There is no clear error if the district court's finding is plausible in light of the record as a whole."[35] "If the district court's decision is procedurally sound, we then consider the substantive reasonableness of the sentence."[36] In reviewing the substantive reasonableness of the sentence, we apply "an abuse-of-discretion standard of review, and within-Guidelines sentences enjoy a presumption of reasonableness."[37]

---

[33] *United States v. Gaspar-Felipe*, 4 F.4th 330, 344 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 903 (2022).

[34] *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017).

[35] *United States v. Juarez Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam) (citation omitted).

[36] *Nguyen*, 854 F.3d at 280.

[37] *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011).

No. 19-50855

**1.**

Dennis first raises a procedural challenge to the calculation of the drug quantity finding of 11,194.37 kilograms. "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue."[38] This finding was supported by 9,000 kilograms based on Trevino's testimony, 1,896.07 kilograms based on Ibarra-Gonzalez's statement and Garcia-Herrera's testimony, 118.85 kilograms seized from Dennis, and $197,313 seized from Dennis, converted to 186.45 kilograms.

Dennis argues that the calculation is not supported by the record because Trevino, Garcia-Herrera, and Ibarra-Gutierrez are not reliable and have motives to falsify testimony. Information provided by codefendants and confidential sources may support a drug quantity finding;[39] such statements are sufficiently reliable where other information corroborates details about the drug scheme.[40] Here, in addition to the testimony, there was video surveillance, a recorded call with Trevino, and the marijuana, money, scales, and money counters found on Dennis's property, all corroborating the district court's finding. Moreover, Dennis argued to the jury that Trevino and Garcia-Herrara were unreliable because they cooperated with the government. "[T]o find [the testimony] categorically unreliable for sentencing purposes, where the government's burden of proof is by a preponderance of the evidence, would automatically call into question the jury's verdict, which was based on the higher beyond a reasonable doubt

---

[38] *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995).

[39] *United States v. Zuniga*, 720 F.3d 587, 591–92 (5th Cir. 2013); *United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012).

[40] *United States v. Rogers*, 1 F.3d 341, 344 (5th Cir. 1993).

standard."[41] Dennis's argument that Trevino, Garcia-Herrera, and Ibarra-Gutierrez provided unreliable testimony fails.

Dennis also challenges the conversion of the $197,313 cash to 186.45 kilograms of marijuana. "Converting the money seized from a drug defendant into its equivalent amount of drugs is not clear error."[42] The record supports the $480 per pound value used to convert the $197,313[43] because Dennis told Trevino he was buying marijuana for $380 to $400 a pound and hydroponic marijuana for $800 per pound.

**2.**

Dennis challenges the two-level enhancement for the use of violence. Section 2D1.1(b)(2) directs an increase of two levels to the base offense level "if the defendant used violence, made a credible threat to use violence, or directed the use of violence."[44] Application of the provision is a factual finding reviewable for clear error.[45] An agent entering Dennis's home saw the barrel of an assault rifle protrude around a corner, withdraw, and emerge again. Near the entry, the agents found an AR-15 rifle and an AK-47-type pistol with a drum of magazine boxes. The district court's finding that Dennis used or threatened the use of force was not clearly erroneous.

---

[41] *Cantu-Ramirez*, 669 F.3d at 629.

[42] *United States v. Haines*, 803 F.3d 713, 743 (5th Cir. 2015); U.S.S.G. § 2D1.1 cmt. n. 5).

[43] Even without the converted marijuana quantity, the total quantity of marijuana exceeds the 10,000 kilogram marijuana threshold for base offense level 34, rendering harmless any error. U.S.S.G. § 2D1.1 Drug Quantity Table.

[44] U.S.S.G. § 2D1.1(b)(2).

[45] *United States v. Lira-Salinas*, 852 F. App'x 860, 861 (5th Cir. 2021) (per curiam).

**3.**

Dennis also challenges the substantive reasonableness of his sentence because the district court did not consider the changing legal status of marijuana. Even in states with more lenient marijuana laws, other federal courts have declined to consider the status of marijuana as a sentencing factor.[46] Even so, the district court sentenced Dennis to 216 months—144 months below the guidelines range.[47] Dennis has already received what he now requests: a downward variance of his sentence to account for the difference between marijuana and other drugs. The sentence imposed by the district court was without error.

**IV.**

Finally, Dennis challenges the forfeiture of his property.

**A.**

Dennis argues that he ought to have a new trial on forfeiture because he did not personally waive his right to a jury. Dennis did not object to the judge hearing the forfeiture until months after the hearing. As Dennis's objection was not properly preserved, we review for plain error. Dennis "bears the burden of proving (1) error, (2) that is plain, and (3) that affects his substantial rights."[48]

When the indictment states the government is seeking forfeiture "the court must determine before the jury begins deliberating whether either party

---

[46] *United States v. Zachariah*, No. SA-16-CR-694-XR, 2018 WL 3017362, at *1 (W.D. Tex. June 15, 2018) (collecting cases).

[47] The district court said it imposed a non-guidelines sentence because it "was marijuana and not meth, and not some other heavy type of drug."

[48] *United States v. Valdez*, 726 F.3d 684, 699 (5th Cir. 2013) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict."[49] Forfeiture, "as an aspect of sentencing, does not fall within the Sixth Amendment right to a jury determination of guilt or innocence."[50] We have not recognized a constitutional right to a jury for criminal forfeiture.[51] The district court determined before trial that the forfeiture hearing would proceed without a jury. After trial, the district court confirmed, and counsel twice replied, that Dennis did not wish for a jury. "[B]ecause counsel is the defendant's agent, the defendant 'must accept the consequences of the lawyer's decision[s].'"[52] Accepting counsel's waiver of a jury is not plain error.

## B.

Dennis argues that there is insufficient evidence to support the $7.2 million forfeiture ordered by the district court and that it thus violates the Excessive Fines Clause.[53] We review the district court's legal conclusions as to the propriety of a forfeiture order *de novo*, the district court's findings of facts under the clearly erroneous standard, and "the question of whether those facts constitute legally proper forfeiture *de novo*."[54]

The Comprehensive Forfeiture Act ("CFA") "was intended to reach every last dollar that flowed through the criminal's hands in connection with

---

[49] Fed. R. Crim. P. 32.2(b)(5)(A).

[50] *Libretti v. United States*, 516 U.S. 29, 30 (1995).

[51] *United States v. Simpson*, 741 F.3d 539, 560 (5th Cir. 2014).

[52] *United States v. Cabello*, 33 F.4th 281, 295 (5th Cir. 2022) (quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988)).

[53] Dennis also challenges the district court's calculations on the basis that Trevino was not a credible witness, but, as above, the district court found Trevino to be credible.

[54] *United States v. Olguin*, 643 F.3d 384, 395 (5th Cir. 2011).

the illicit activity."[55] This Court has "upheld reasonable estimates for calculating criminal forfeiture,"[56] bound by the stricture that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."[57] When making the proportionality determination, we consider

> (a) the essence of the defendant's crime and its relationship to other criminal activity; (b) whether the defendant was within the class of people for whom the statute of conviction was principally designed; (c) the maximum sentence, including the fine that could have been imposed; and (d) the nature of the harm resulting from the defendant's conduct.[58]

Dennis's activity was on going; he falls within the class of people for whom the statute of conviction was principally designed, dealing with sources for drugs in Mexico; the forfeiture amount, approximately one-and-a-half times the maximum guidelines and statutory range of $5 million, was not "grossly disproportional;"[59] and the scale of his distribution inflicted the harm addressed by the statute of conviction. Dennis is only being held accountable for sums he received from his own involvement in this criminal conspiracy.[60] Finally, contrary to Dennis's assertions, the district court accounted for the forfeiture of Dennis's real property in setting the forfeiture amount; the

---

[55] 21 U.S.C. § 853(a)(2); *Olguin*, 643 F.3d at 400.

[56] *United States v. Mazkouri*, 945 F.3d 293, 307 (5th Cir. 2019) (collecting cases).

[57] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

[58] *United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020) (citation omitted).

[59] *Suarez*, 966 F.3d at 387; *see United States v. Haro*, 753 F. App'x 250, 259 (5th Cir. 2018).

[60] *Olguin*, 643 F.3d at 400.

No. 19-50855

forfeiture of these assets was not duplicative. The $7.2 million forfeiture order was without error.

****

We AFFIRM Dennis's conviction and sentence, including its order of forfeiture.