# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2570
_____

United States of America

*Plaintiff - Appellee*

v.

Reginald Austin

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 10, 2024
Filed: June 17, 2024
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury convicted Reginald Austin of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), after law enforcement found a loaded Taurus 9-millimeter semiautomatic handgun in Austin's pants during a traffic stop. Austin moved to suppress the firearm, arguing: (1) officers unreasonably prolonged the traffic stop, and (2) they lacked reasonable suspicion to conduct the pat-down

searches. The district court[1] denied his motion and sentenced him to a 51-month term of imprisonment. When calculating the applicable United States Sentencing Guidelines, the district court added two points to his criminal history score pursuant to U.S.S.G. § 4A1.1(e). Austin asserts that because his two prior qualifying convictions for crimes of violence occurred on the same occasion as another crime of violence that received criminal history points, § 4A1.1(e) is inapplicable. Austin appeals, challenging the district court's denial of his motion to suppress, the government's comments during closing argument, and the court's application of § 4A1.1. We affirm.

## I.  BACKGROUND

On July 28, 2020, St. Louis Metropolitan Police Officer Eric Lang observed a yellow Chevrolet Camaro make a wide right turn out of a gas station, causing it to cross from the right lane of the road into the left lane and back to the right lane. The yellow Camaro sparked Officer Lang's interest because he believed it was the same yellow Camaro that he saw driving recklessly earlier that day in the same area.

Officer Gregston, who was driving the patrol car, maneuvered to pull behind the Camaro. Once behind the Camaro, Officer Lang observed the Camaro cross the line between the right and left lane before correcting back into the right lane, which Office Lang testified constitutes weaving and improper lane usage in violation of the city's traffic ordinances. At around 8:18 p.m., the officers initiated a traffic stop.

As Officer Lang approached the Camaro, he and Gregston both observed the driver, Austin, moving up and down in his seat, as if he was trying to hide something. Officer Lang smelled marijuana when he leaned through the passenger window to ask Austin for identification and to explain the reason for the stop. He also observed Austin hunched over as if he was concealing something on his lap.

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

When Officer Lang returned to the police car to run a records check, he explained to Officer Gregston that he smelled marijuana in Austin's car. Officer Lang exited the squad car, returned to the Camaro, and asked Austin whether he had drugs or weapons in the car. Austin claimed he had neither of those things, but when Officer Lang told him he could smell marijuana, Austin admitted that he smoked earlier in the day. This second interaction with Austin lasted a minute or two.

Meanwhile, after Officer Gregston completed the records check, which took less than five minutes, he approached the driver's side door of the Camaro. Officer Gregston noticed the smell of marijuana as he reached the driver's side door. Officer Gregston reported to Officer Lang that Austin was a felon and asked Austin to get out of the Camaro. As Austin got out and Officer Gregston conducted a pat-down on him, Officer Lang observed an unnatural bulge in Austin's lap area. By the time Officer Lang walked from the passenger side to the driver's side, Officer Gregston had completed his pat-down and Austin was walking towards the Camaro. As he walked, Austin moved his left arm to his lap area. Officer Lang, concerned that Austin was reaching for a concealed item, grabbed Austin's left arm to place him in handcuffs. When the officers attempted to remove a cell phone from Austin's hand, Austin spontaneously shouted to the person on the cell phone, "They're locking me up they found the gun baby." It was later determined that the person Austin was speaking with on the phone was his girlfriend.

A second pat-down search revealed a loaded Taurus 9-millimeter semiautomatic handgun. At 8:26 p.m., officers placed Austin under arrest for unlawful possession of a firearm. Austin was subsequently issued citations for the traffic violations.

Austin moved to suppress the firearm seized during the warrantless search of his person, arguing the traffic stop was unlawful and it was unreasonably prolonged. The magistrate judge issued a report and recommendation denying the motion, which the district court adopted.

Austin represented himself at trial, and a jury convicted him of being a felon in possession of a firearm. At sentencing, the district court determined Austin's advisory Sentencing Guidelines range was 51 to 63 months, which was based on a total offense level of 20 and criminal history category IV. The district court calculated a total of eight criminal history points arising from two Missouri Circuit Court cases—one involving tampering with a motor vehicle on January 18, 2004 (three points), and another involving a gang-related shooting on January 26, 2004 (five points). Austin conceded that his prior convictions for second-degree murder and first-degree assault (two counts) constitute crimes of violence, but since they were all part of a single criminal occurrence, he argued U.S.S.G.§ 4A1.1(e) did not apply. The district court overruled Austin's objections to the criminal history calculation and sentenced him to 51 months. Austin now appeals.

## II.   DISCUSSION

### A.    Motion to Suppress

When considering a challenge to the denial of a motion to suppress, we review the district court's findings of fact for clear error and the ultimate conclusion of whether the Fourth Amendment was violated *de novo*. United States v. Williams, 777 F.3d 1013, 1015 (8th Cir. 2015). We will affirm unless the district court's decision is unsupported by the evidence, is based on an erroneous view of the law, or we are left with a firm conviction that a mistake has been made. United States v. Donnelly, 475 F.3d 946, 951 (8th Cir. 2007).

Austin first challenges the traffic stop on the ground that it was unreasonably prolonged. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Rodriguez v. United States, 575 U.S. 348, 350 (2015). "Whether the duration of the stop is reasonable is determined by the seizure's 'mission,' and law enforcement must be 'reasonably diligent' in carrying out that mission." United States v. Magallon, 984 F.3d 1263, 1278 (8th Cir. 2021) (quoting Rodriguez, 575

U.S. at 354, 357). Once an officer finishes the tasks associated with a traffic stop, it is unreasonable to further detain the vehicle's occupants unless something occurs during the stop to generate reasonable suspicion to justify the further detention. United States v. Gunnell, 775 F.3d 1079, 1083-84 (8th Cir. 2015).

Here, the traffic stop was not unreasonably prolonged. It took Officer Gregston about six minutes to complete a records inquiry. Within minutes of encountering Austin, the officers had reasonable suspicion to investigate possible criminal activity beyond the traffic violation. The odor of marijuana, Austin's furtive behaviors suggestive of an attempt to conceal something, and his admission that he had smoked marijuana earlier that day gave the officers reasonable suspicion to prolong the traffic stop. Austin has failed to demonstrate the traffic stop was unreasonably prolonged or extended.

Austin also claims the officers lacked a reasonable suspicion to conduct a pat-down, which led to the discovery and seizure of a 9-millimeter handgun. During a valid stop, officers may conduct a protective pat-down search for weapons to ensure officer safety if they have objectively reasonable suspicion that a person might be armed and dangerous. United States v. Stokes, 62 F.4th 1104, 1108-09 (8th Cir. 2023). Here, both officers testified that as Officer Lang approached the Camaro, they could see Austin moving up and down in the driver's seat. Officer Lang smelled marijuana when he asked Austin for identification and explained the reason for the stop. He also noticed that Austin was hunched over apparently concealing something on his lap, which caused Officer Lang to suspect Austin was potentially concealing either a weapon or narcotics. Officer Lang testified that Austin initially denied having drugs or weapons in the car but when confronted about the smell of marijuana, Austin confessed to smoking marijuana earlier. A record check revealed that Austin was a convicted felon. Officer Gregston also smelled marijuana upon reaching the driver's side door. The officers reasonably suspected that Austin was armed and dangerous based on the totality of the circumstances, including his "furtive gestures" and the suspicious bulge they observed. Finally, when officers attempted to remove the cell phone from Austin's hand, but before the second pat-

down search had revealed the gun, Austin spontaneously shouted to the person on the cell phone, "They're locking me up they found the gun baby."

Because the traffic stop was not unreasonably prolonged and the officers had reasonable suspicion to conduct a protective pat-down, the district court properly denied Austin's motion to suppress.

## B. The Government's Closing Arguments

Austin made no objection to the prosecutor's alleged improper comments during closing argument. Thus, we review for plain error. To obtain relief, Austin must demonstrate the prosecutor's remarks were improper and the remarks affected his substantial rights so as to deprive him of a fair trial. United States v. Obi, 25 F.4th 574, 579 (8th Cir. 2022).

In his closing argument, Austin appealed to the jury's sympathy. In response, the prosecutor stated that choices have consequences and directed the jury to consider the court's instructions to not allow sympathy or prejudice to influence them and to base their verdict on the evidence. Even if the prosecutor's remarks relating to consequences were improper, given the overwhelming evidence of guilt, Austin was not deprived of a fair trial. Austin is not entitled to relief on the claim of an improper closing argument.

## C. Application of Guidelines

"This court reviews *de novo* the district court's interpretation of the Guidelines and reviews for clear error, its application of the Guidelines to the facts." United States v. Garcia, 772 F.3d 1124, 1125 (8th Cir. 2014).

Austin contends he should have received three criminal history points, not five points, for his January 26, 2004, convictions. Austin, relying in part on Wooden v. United States, 595 U.S. 360 (2022), contends the district court improperly applied

U.S.S.G. § 4A1.1(e) because his two other convictions for crimes of violence happened at the same time, same place, and same location as the murder. According to Austin, because these convictions were related and part of an uninterrupted course of conduct, all three convictions are part of "one occasion" rendering §4A1.1(e) inapplicable.

At the time of the instant offense, § 4A1.1(e)[2] provided for an additional point, up to a total of three points, "for each prior sentence resulting from a conviction of a crime of violence that did not receive any points . . . because such sentence was treated as a single sentence." Austin was sentenced in Missouri state court in 2005 to terms of 15 years in prison on the murder and two assault convictions and three years on each armed criminal action conviction, all to run concurrently with each other. Austin does not dispute that the second-degree murder and first-degree assault convictions are qualifying crimes of violence. Nor does he dispute that these three convictions were combined into a single sentence. If the three convictions arising out of the murder were not combined into a single sentence, then each conviction would have resulted in three points for a total of nine points—not the five points assessed by the district court.

Until the 2007 amendments, § 4A1.1(e) did not apply "where the sentences are considered related because the offenses occurred on the same occasion." U.S.S.G. § 4A1.1(f) (2006). As of November 1, 2007, the "occasion" language was removed and it was replaced with the "single sentence" language. Austin's claim that the district court should have considered the assault convictions as part of a "single criminal occurrence" for purposes of § 4A1.1(e) is inconsistent with the latter part of the provision which "refers back to uncounted *sentences* for crimes of violence rather than uncounted 'crimes of violence' themselves." See United States v. Scott, 654 F.3d 552, 556 (5th Cir. 2011). In addition, there is a provision in the

_____

[2]Before November 1, 2010, this provision was found in § 4A1.1(f). The provision was then renumbered to § 4A1.1(e) in the November 1, 2010, Guidelines Manual. As of November 1, 2023, § 4A1.1(e) is now § 4A1.1(d).

Sentencing Guidelines that defines "crime of violence" as an "offense" with certain characteristics. U.S.S.G. § 4B1.2(a). The commentary of § 1B1.1 states that an "offense" consists of "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." Given the specific definition of offense and therefore also of "crime of violence" that is provided for in the Guidelines, Austin's attempt to broaden the meaning of "crime of violence" to encompass a "single criminal occurrence" is inconsistent with the plain language. See Scott, 654 F.3d at 556.

Likewise, Austin's reliance on Wooden is misplaced. In Wooden, the Supreme Court interpreted the Armed Career Criminal Act and its enhanced sentencing for those who committed multiple crimes of violence "on occasions different from one another." 595 U.S. at 364. Austin has not established a basis for applying the Armed Career Criminal Act's "on occasions different from one another" test to the "single sentence" provision contained in § 4A1.1(e) and defined in § 4A1.2(a)(2). In 2020, when Austin committed the instant offense and in 2023 when he was sentenced, a plain reading of § 4A1.1(e) supports the district court's assessment of two additional criminal history points for the uncounted sentences. There is no limitation in the language requiring that the conduct occur at a different time or place or occasion as suggested by Austin. Because Austin committed three crimes of violence for which he received a single sentence, the district court properly assessed one additional point for each assault conviction.

Finally, Austin's reliance on a prior version of U.S.S.G. § 4A1.1 and its application notes are also unavailing. "[D]istrict courts must use the Guidelines Manual in effect at the time of sentencing, unless doing so would violate the *Ex Post Facto* Clause." United States v. Williams, 899 F.3d 659, 666 (8th Cir. 2018). The *Ex Post Facto* Clause has not been interpreted to protect defendants from recidivism laws that consider a defendant's past criminal activity. See Peugh v. United States, 569 U.S. 530, 533 (2013) (noting the *Ex Post Facto* Clause protects criminal defendants from changes in the law, including those that inflict a greater punishment than the law in effect when the offense was committed); Parke v. Raley, 506 U.S.

20, 27 (1992) (stating that a recidivism statute does not state a separate offense but goes to punishment only and noting that claims challenging these statutes on double jeopardy, ex post facto, cruel and unusual punishment, due process, equal protection, and privileges and immunities grounds have repeatedly failed).

Further, Austin committed the instant offense on July 28, 2020. When the 2007 amendment removing the "occasion" language from § 4A1.1 was adopted, Austin was in custody and had not committed the firearms offense. Austin has failed to establish a violation of the *Ex Post Facto* Clause. The district court did not err when it used the Guidelines Manual in effect at the time of sentencing.

## III.   CONCLUSION

The judgment of the district court is affirmed.

_____