**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————

No. 16-51226

————

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2017

Lyle W. Cayce
Clerk

16-51226

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee

v.

MARIA GUADALUPE HERNANDEZ, also known as Lou Hernandez,

　　　　Defendant - Appellant

-------------------------------------------------------------------------------------------------

Consolidated with 16-51240

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee

v.

HILDA SIMENTAL MENDOZA,

　　　　Defendant - Appellant

————

Appeals from the United States District Court
for the Western District of Texas

————

No. 16-51226
Cons w/ No. 16-51240

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:

Maria Hernandez and Hilda Mendoza, two former employees at El Paso Federal Credit Union, pleaded guilty to wire and bank fraud charges arising out of their modified "Ponzi scheme," in the course of which they issued "unrecorded" share certificates and misappropriated the proceeds. In this consolidated appeal, both defendants challenge the sentences imposed by the district court. For the reasons discussed below, we affirm the district court's sentences.

**I**

Hernandez and Mendoza were employed as a manager and assistant manager, respectively, by El Paso Federal Credit Union. In 2015, both employees were charged with bank fraud, wire fraud, and conspiracy to commit both after a government investigation uncovered their scheme that involved fraudulently issuing "unrecorded" share certificates from the credit union. The credit union funded its operations in part by selling shares of the company to investors for a fixed principal amount, issuing share certificates as proof of ownership. The investors were then paid dividends during the term of the certificate and were owed a return of their principal at the end of the term. The credit union managed these transactions by maintaining detailed records of the money coming in and the schedule of payments owed.

From 2007 until 2012, however, Hernandez and Mendoza sold as many as 111 share certificates without recording them or conveying the funds to the credit union, incurring substantial debt for the company without its knowledge. Because each share certificate required two employee signatures, Hernandez and Mendoza each signed every certificate. The employees hid the money paid by the investors in deceased customers' accounts, dormant

No. 16-51226
Cons w/ No. 16-51240

accounts, and other accounts that Hernandez controlled.  The defendants then used some of this money to continue the scheme by paying out dividends to purchasers of the unrecorded certificates, using the credit union's software and printer to print dividend checks with magnetic-ink routing numbers. Hernandez also used millions for personal expenses: funding vacations, gambling in Las Vegas, and purchasing real estate.

This scheme was ultimately revealed after a 2011 audit by the National Credit Union Administration (NCUA) triggered a government investigation that uncovered the 111 unrecorded certificates.  The credit union, having insufficient assets to pay the holders of these certificates, became insolvent, and the NCUA paid out approximately $18.3 million in claims to these investors.

Hernandez and Mendoza were both indicted and pleaded guilty to all charges.  Each defendant's presentence report (PSR) increased her base offense level under the United States Sentencing Guidelines by 20 for causing a loss of over $7 million.  Additionally, both PSRs included a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(11) for using an "authentication feature"—the magnetic-ink routing numbers—on the unrecorded dividend checks.  At Hernandez's sentencing, the district court calculated her Guidelines range at 188–235 months and sentenced her to 188 months imprisonment.  At Mendoza's sentencing, the district court reduced her offense level for acceptance of responsibility and for serving a relatively minor role in the fraud, calculating a final Guidelines range of 121–151 months and sentencing her to 121 months imprisonment.  Both Hernandez and Mendoza timely appealed, Hernandez challenging her sentencing enhancements for using an authentication feature and for causing a loss over $7 million, and Mendoza challenging her sentence as substantively unreasonable.

3

No. 16-51226
Cons w/ No. 16-51240

## II

We review the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007). Sentences challenged for substantive reasonableness are reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). If the defendant fails to object at sentencing to the procedural or substantive reasonableness of her sentence, we review only for plain error. *United States v. Peltier*, 505 F.3d 389, 391–92 (5th Cir. 2007).

## III

Section 2B1.1(b)(11) of the United States Sentencing Guidelines provides for a two-level increase in the offense level if the defendant possessed or used an authentication feature to further the crime. An authentication feature is defined in relevant part by 18 U.S.C. § 1028(d)(1) as any "symbol, code, image, or sequence of numbers . . . used . . . to determine if the document is counterfeited, altered, or otherwise falsified." *See* U.S.S.G. § 2B1.1, comment. (n.10).

Hernandez asserts that her conduct—printing checks with magnetic ink routing numbers using software available in the ordinary course of her employment—should not trigger this enhancement. She argues that the authentication-feature enhancement was intended for defendants who actively seek out machines capable of creating authentication features. Because the purpose of the enhancement, she alleges, is to deter those who "rise to the level of sophistication where they obtain machines capable of creating authentication features," applying it to her conduct uproots the policy goals of this provision.

However, Hernandez provides virtually no support for her allegation that this is, in fact, the policy goal of this enhancement. The text of the

4

No. 16-51226
Cons w/ No. 16-51240

relevant Guidelines provision offers no indication that the section should be given the narrower construction that Hernandez suggests; instead it merely directs the reader to the definition of authentication feature in § 1028(d)(1). Section 1028 similarly provides no basis to conclude that those who misuse equipment provided by their employer are outside the scope of this enhancement.

Even if Hernandez could demonstrate that this enhancement was intended for those who "seek out" devices to create authentication features, the plain language of the Guidelines controls "unless it creates an absurd result." *United States v. Gordon*, 838 F.3d 597, 603 (5th Cir. 2016). Here, the magnetic routing numbers printed on the fraudulent checks clearly constitute a "string of numbers" used to "determine if the document is counterfeited, altered, or otherwise falsified." 18 U.S.C. § 1028(d)(1). Further, there is nothing "absurd" about applying the enhancement to Hernandez. We do not accept Hernandez's suggestion that she was necessarily less culpable than someone who does not use their employment to access an authentication machine. Though Hernandez may not have independently accessed such a device, she exploited the tools entrusted to her by the credit union to perpetuate a fraud that ultimately rendered the company insolvent. Accordingly, the district court did not err in applying the authentication-feature enhancement to Hernandez's sentence.

## IV

Hernandez additionally contends that the district court erred in holding her responsible for a loss of $18,376,542, which led to a 20-level increase in her base offense level under U.S.S.G. § 2B1.1(b)(1). A district court's loss calculation, and its embedded determination that the loss amount was reasonably foreseeable, are factual findings reviewed for clear error. *United*

5

*States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003) (loss calculation reviewed for clear error); *United States v. Hull*, 160 F.3d 265, 268–69 (5th Cir. 1998) (loss foreseeability determination reviewed for clear error). The district court need only make "a reasonable estimate of the loss," based on its assessment of the evidence. *United States v. Hebron*, 684 F.3d 559, 560 (5th Cir. 2012) (citing U.S.S.G. § 2B1.1, comment. (n.3(C)). This court will not overturn these factual findings as long as they are "plausible in light of the record as a whole." *Sanders*, 343 F.3d at 520.

Hernandez's argument does not properly account for the record as a whole and instead focuses on one piece of evidence: an audit report prepared by Lillie and Company, LLC. Because this particular report only specifically traced $3.7 million of the over-$18 million loss directly to Hernandez, she argues that the district court erred by holding her accountable for the entire loss.

Notably, however, the Lillie Report did not purport to be an accounting of the full extent of the loss Hernandez caused. The Lillie Report was instead prepared for the narrow purpose of substantiating sufficient loss to support an insurance claim by the credit union. Regardless, this report even stated that "it appears the Credit Union sustained a loss of at least $19 million resulting from the actions of their former employee, Lou Hernandez." Additionally, other evidence considered by the district court supported its loss calculation. Prior to sentencing, the court held an evidentiary hearing at which a certified public accountant who prepared the Lillie Report and a NCUA director who oversaw the liquidation of the credit union testified that Hernandez and Mendoza's criminal conduct caused the loss of over $18 million. Accordingly, the district court's determination that Hernandez was responsible for a loss

6

over the Guidelines threshold of $7 million meriting the 20-level enhancement was "plausible in light of the record as a whole." *Sanders*, 343 F.3d at 520.

## V

We now turn to Mendoza, the assistant manager at the credit union. Mendoza challenges her sentence as substantively unreasonable, contending that it is greater than necessary to satisfy the sentencing goals set forth in 18 U.S.C. § 3553(a). Though Mendoza did not object to her sentence after it was imposed, she argues that she preserved her argument for appeal by requesting a below-Guidelines variance both in writing and at her sentencing hearing before the sentence was announced. Accordingly, she argues, her claim should not be reviewed under the less-favorable plain error standard. Because we determine that Mendoza could not succeed on the merits of her claim even if she properly preserved her objection, we need not decide whether our review is limited to plain error.

We review an appellant's claim that her sentence is substantively unreasonable for abuse of discretion. *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011). This review is "highly deferential, because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *Id.* A sentence within the Guidelines range is presumptively reasonable, and this presumption is rebutted only if the appellant demonstrates that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors. *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Mendoza does not argue that the district court erred in applying the Guidelines, considered an irrelevant factor, or failed to consider a factor that

7

should be given significant weight.  Rather, she asserts that the Guidelines resulted in a sentence that is too harsh considering the facts of the case and the § 3553(a) factors.  Mendoza argues that her current age, low risk for recidivism, lack of criminal history, and family ties militate in favor of a shorter sentence.  Additionally, Mendoza asserts that she is less culpable than her Guidelines range accounted for because her supervisor, Hernandez, masterminded the scheme and was the only one of them to benefit personally from the fraudulent activity.  As the district court noted, the evidence does not suggest that Mendoza used the funds from their scheme to finance personal luxuries.

At Mendoza's sentencing, the district court carefully considered her request for a downward departure and these mitigating factors, discussed the § 3553(a) factors, and ultimately determined that a 121-month sentence was warranted.  Mendoza's claim amounts to a request that we reweigh the sentencing factors and substitute our judgment for that of the district court, which we will not do.  *See Scott*, 654 F.3d at 552.  Because Mendoza has not rebutted the presumption that her within-Guidelines sentence is reasonable, we find that the district court did not abuse its discretion.

## VI

For these reasons, we affirm the judgment of the district court.

8