# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 26, 2023

Lyle W. Cayce
Clerk

No. 22-30296

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARTIN CORTEZ-BALDERAS,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CR-146-1

_____

Before HAYNES and ENGELHARDT, *Circuit Judges*, and SALDAÑA, *District Judge*.[*]

PER CURIAM:

Martin Cortez-Balderas pleaded guilty to one count of identity theft (18 U.S.C. § 1028) and one count of possession of a firearm by a convicted felon (18 U.S.C. §§ 922(g)(1) and 924(a)(2)). The district court found the calculated guidelines range of 15 to 21 months to be "woefully unreasonable" and varied upwards to a total of 72 months of imprisonment, which consisted

_____

[*] United States District Judge for the Southern District of Texas, sitting by designation.

of a sentence of 36 months for the identity theft offense and a concurrent sentence of 72 months for the firearm offense.  On appeal, Cortez-Balderas challenges only the substantive reasonableness of the 72-month sentence for the firearm offense.

Because Cortez-Balderas objected to the sentence imposed and argued for a shorter sentence, he preserved a challenge to the substantive reasonableness of the sentence.  *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020).  We review a preserved objection to the substantive reasonableness of a sentence for an abuse of discretion, "examining the totality of the circumstances."  *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013).  When evaluating substantive reasonableness, "[a]n above-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors set forth in section [18 U.S.C. §] 3553(a) only where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the factors."  *United States v. Churchwell*, 807 F.3d 107, 123 (5th Cir. 2015) (internal quotation marks and citation omitted).

Cortez-Balderas raises a variety of challenges to the substantive reasonableness of his sentence.  He argues that the district court did not account for the guidelines range and varied from the applicable statutory maximum for the firearm offense.  He also argues that the district court abused its discretion by relying on its own policy of sentencing above the guidelines range for firearm offenses, by giving significant weight to the statements of the victim of the identity theft offense, by giving significant weight to the fact that he has no legal immigration status, and by giving significant weight to a prior conviction for importation of marijuana.  Cortez-Balderas further asserts that the district court made a clear error of judgment in balancing the sentencing factors of § 3553(a).

No. 22-30296

We conclude that Cortez-Balderas has not shown that the district court abused its discretion. *See Warren*, 720 F.3d at 332. First, the district court clearly considered the guidelines range and then varied upward from it. Although the district court suggested that it often imposes a higher sentence in cases involving firearms, the district court's other comments show that the sentence imposed in this case was based on permissible considerations and not simply on a mechanical approach or personal policy. *Cf. United States v. Lamp*, 779 F.2d 1088, 1098 (5th Cir. 1986). Similarly, although it was discussed at sentencing, the district court did not give significant weight to Cortez-Balderas's lack of legal immigration status. We also conclude that the district court did not abuse its discretion by giving significant weight to Cortez-Balderas's prior marijuana importation offense, which is the predicate offense for his firearm conviction, and to the statements of the victim of the identity theft, *see United States v. Diehl*, 775 F.3d 714, 725 (5th Cir. 2015). Finally, Cortez-Balderas has not shown that the district court made a clear error of judgment in balancing the sentencing factors of § 3553(a), and we decline to reweigh those factors. *See United States v. Hernandez*, 876 F.3d 161, 167 (5th Cir. 2017).

AFFIRMED.

No. 22-30296

Kurt D. Engelhardt, *Circuit Judge*, concurring:

I concur in the per curiam opinion that the judgment should be affirmed. But I believe that opinion does not sufficiently explain the record facts before the district court. To fully appreciate the "individualized assessment" reasonably made by the district court in evaluating the § 3553(a) factors, a much more complete review of the defendant's relevant conduct is in order. Indeed, in doing so, we can more directly, specifically, and fully address the issues he raises on appeal.

I.

As a result of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), the United States Sentencing Guidelines are advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." *Gall v. United States,* 552 U.S. 38, 46 (2007). Even so, the Sentencing Guidelines are "the starting point and the initial benchmark." *Id.* at 49. Thus, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.; United States v. Smith,* 440 F.3d 704, 707 (5th Cir. 2006) (district court must calculate the guideline range and consider it advisory).

After giving both parties an opportunity to argue for whatever sentence they think is appropriate, the district judge considers all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Id.* at 49–50. The § 3553(a) sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense and provide just punishment, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the Sentencing Guidelines and any relevant policy statements; and (5) the need to avoid

4

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n. 6.

The district judge's consideration of the § 3553(a) factors requires an "individualized assessment based on the facts presented." *Id.* at 50. "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* "[A] major [deviation] should be supported by a more significant justification than a minor one." *Id.* "After settling on the appropriate sentence, [the district judge] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

Given the process outlined in *Gall*, appellate review of a sentence is bifurcated. *United States v. Scott*, 654 F.3d 552, 554 (5th Cir. 2011). First, we determine whether the district court committed procedural error.[1] If the sentencing decision is procedurally sound, we then assess the substantive reasonableness of the sentence that was imposed. *Gall*, 552 U.S. at 51. In this appeal, Cortez-Balderas challenges only the substantive reasonableness of the 72-months sentence of imprisonment that he received for his § 922(g)(1) firearm offense.

---

[1] Procedural errors include: "(1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range." *Scott*, 654 F.3d at 555 (quoting *United States v. Armstrong*, 550 F.3d 382, 404 (5th Cir. 2008)). The district court's interpretation or application of the sentencing guidelines are reviewed de novo; its factual findings are reviewed for clear error." *Id.* at 51.

"A non-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors set forth in § 3553(a)" if it:

> (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.

*Smith*, 440 F.3d at 708. We evaluate the substantive reasonableness of the sentence utilizing an abuse-of-discretion standard of review. *Gall*, 552 U.S. at 51. In doing so, we consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*

"The farther a sentence varies from the applicable Guidelines sentence, the more compelling the justification based on factors in section 3553(a) must be." *Smith*, 440 F.3d at 707 (internal quotation marks and citation omitted). Even so, "the appellate court must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. Thus, our "review for substantive reasonableness is 'highly deferential,' because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) (quoting *United States v. Key*, 599 F.3d 469, 473 (5th Cir. 2010)).

Even a significant variance from the Guidelines does not constitute an abuse of discretion if it is "commensurate with the individualized, case-specific reasons provided by the district court." *United States v. McElwee*, 646 F.3d 328, 338 (5th Cir. 2011) (quoting *United States v. Herrera–Garduno*, 519 F.3d 526, 531 (5th Cir. 2008)). And, importantly, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

No. 22-30296

II.

Cortez-Balderas asserts a number of related challenges to the substantive reasonableness of the firearm offense's 72-months prison sentence. Given the totality of circumstances reflected in the record of this matter, however, none of his challenges have merit.

Personal Policy of Varying Upward

In challenging the substantive reasonableness of his firearm offense sentence, Cortez-Balderas first contends that the district court failed to properly account for the applicable Guidelines range—15 to 21 months' imprisonment—that the Supreme Court has said should be the "starting point and initial benchmark" in sentencing. *Gall*, 552 U.S. at 49. Instead, he maintains that the district court, following its own "personal policy" of sentencing § 922(g)(1) firearm offenses above the otherwise applicable Guidelines range, determined his sentence based on the statutory maximum sentence of 120 months, which then was reduced to 72 months *only* because of the adverse impact that his imprisonment had upon his three minor children. ("The only reason I'm not giving you ten years is because of your children. I'm just telling you that right now. You deserve it.")

Contrary to Cortez-Balderas' assertions, the record clearly reflects that the district court considered the 15 to 21 months' Guidelines range and then, finding it "woefully unreasonable," varied upward in accordance with the process described in *Gall* and its progeny. And, though the district court's comments during the May 17, 2022 sentencing hearing confirm that it previously has imposed upward-varying non-Guidelines sentences in other § 922(g)(1) firearm cases,[2] the court's stated reasons, considered as a whole

_____

[2] The district judge stated: "You don't know my track record. With a prior distribution of kilos of marijuana into our country, I would. I've done it in the past. I had one of your predecessors, Mr. Schwab, say 'I don't know why we plead clients guilty to

No. 22-30296

and in proper context, show that Cortez-Balderas' sentence was based on permissible individualized considerations, not an invalid fixed, or mechanical, personal sentencing policy. *See United States v. Lamp*, 779 F.2d 1088, 1098 (5th Cir. 1986) (judge's statement that he could not recall having declined to impose a term of imprisonment for a certain offense did not demonstrate a mechanical sentencing policy precluding consideration of a probationary sentence); *United States v. Cavazos*, 530 F.3d 4, 6 (5th Cir. 1976) (refusing to condone mechanical sentencing policy that eliminated probation from consideration based solely on the crime category); *United States v. Hartford*, 489 F.2d 652, 655–56 (5th Cir. 1974) (rigid sentencing policy of automatically imposing the maximum sentence for the particular type of offense, rather than the individualized record of the defendant, abused judicial discretion and abdicated judicial responsibility).

Irrelevant and Improper Sentencing Factors

Cortez-Balderas also argues that the district court abused its discretion in determining the sentence for his § 922(g)(1) firearm offense by giving significant weight to factors that he contends are irrelevant and improper. First, Cortez-Balderas maintains that he received an above-Guidelines prison sentence for the § 922(g)(1) firearm offense largely because of the substantial negative impact that the identity theft offense had on the victim of that crime, Joe Daniel Pineda. Although not contesting the many and varied hardships suffered by Mr. Pineda, Cortez-Balderas contends that they cannot support his above-Guidelines sentence for the firearm offense because the two offenses have no factual connection beyond his own involvement. He additionally argues that the district court chose the upward variance for the firearm offense as an invalid means of increasing his

---

[being] convicted felons with firearms because you're always going above the maximum.' I would, and I'll say that for the record as well.")

punishment for the identity theft offense above the maximum amount permitted by 18 U.S.C. § 1028(b)(2).

Next, he challenges the propriety of the weight that the district court gave to his 2004 "nearly two-decades-old" drug offense[3] in deciding to impose an above-Guidelines sentence for the § 922(g)(1) firearm offense. Specifically, he argues that the "court's statements focused on its concerns about the severity of the prior offense, for which [he] already punished, and assumptions about that conduct based on his immigration status."

Lastly, Cortez-Balderas contends that the district judge's references to his immigration status during the sentencing hearing indicate that he improperly considered that status in deciding the § 922(g)(1) above-Guidelines sentence.

The district court did not abuse its discretion in considering the substantial and ongoing harms suffered by the victim of the identity theft offense, and/or Cortez-Balderas' 2004 marijuana importation offense, in determining the appropriate sentence for the § 922(g)(1) firearm possession offense. In this instance, both unquestionably are relevant to § 3553(a) factors that district courts are directed to consider in determining an appropriate sentence, *i.e.*, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from other crimes of the defendant. And, when the Sentencing Guidelines and resulting range of imprisonment do not adequately account for such information, district courts

---

[3] The 2004 drug offense is the predicate felony conviction for the 18 U.S.C. § 922(g)(1) violation (prohibiting possession of a firearm by a person convicted of a crime punishable by a term of imprisonment exceeding one year).

No. 22-30296

have discretion to impose a non-Guidelines sentence that does. The record clearly reflects that the district court so did here.[4]

Indeed, in arguing his position, Cortez-Balderas seemingly concedes that the 2004 drug offense has *some* relevance to the court's determination of his sentence, given that points for the offense would have been included in the calculation of his criminal history category but for its age. Even so, he maintains that its sentencing significance vis-à-vis an upward variance is

_____

[4] The district court's oral and written statements identify § 3553(a) factors as reasons for the upward-varying non-Guidelines sentences that were chosen for Cortez-Balderas' offenses. The transcript of the May 17, 2022 sentencing hearing reflects that the district judge, in discussing the § 3553(a) factors, highlighted: (1) Cortez-Balderas' continuing misuse of Mr. Pineda's identity "for at least 20 years" and that he was "still abusing it in 2019"; (2) the seriousness of the offenses: that Cortez-Balderas may not have realized small consequences but definitely did when "smuggling drugs into the country"; (3) history and characteristics: Cortez-Balderas "abused [Mr. Pineda's] identity for 17 years," and imported drugs for which he was convicted under Mr. Pineda's name; (4) promote respect for law and provide just punishment: that it is "hard to believe" that Cortez-Balderas now "respects the law" and has "learned his lesson" because even after he was "busted for kilos of marijuana," he "continued to use [Mr. Pineda's] identity getting traffic attachments"; (5) deter future crime and protect the public: the district judge "hears all the time" that a defendant will "never do it again" whereas Cortez-Balderas had been "abusing" Mr. Pineda for 17 years. The district judge also indicated that he would vary upward in sentencing for the firearm offense (even if had not been joined with the identity theft) given the fact of the prior drug charge; specifically, that Cortez-Balderas "deserves" the statutory maximum sentence—10 years—for the firearm offense given the prior drug offense ("infecting our citizens with 24.3 kilos of marijuana") and his decision to have a gun (despite knowing of legal prohibition), but instead was sentenced to 7 years because of his children.

The May 23, 2022 written "Statement of Reasons" similarly designates as reasons: "History and Characteristics of the Defendant"; "Issues with Criminal History" (specifying "Identity theft of real person spanning 17 years; serious prior offenses"); "To afford adequate deterrence to criminal conduct"; and "To protect the public from further crimes of the defendant." The section of the document providing space to "state the basis for a variance" additionally reports: "The victim, whose identity was stolen, suffered an ongoing ordeal which impacted his criminal and financial record, as well as his ability to obtain a driver's license."

No. 22-30296

similarly limited, reasoning that including criminal points for the drug offense would add only a few months' imprisonment to his resulting Guidelines range.[5] Thus, he contends, consideration of his 2004 drug conviction justifies, *at most*, only a very small upward variance, not the 72 months' imprisonment imposed here.

Cortez-Balderas fails to fully appreciate the gravity of his criminal history, which clearly supports the district court's assessment of the § 3553(a) factors and decision to impose the 72-months non-Guidelines sentence. Specifically, because Cortez-Balderas, a Mexican national, lacked legal immigration status after entering the United States, in the late 1980's, using a U.S. Border Crossing Card and then overstaying his authority, he purchased the birth certificate of an American citizen of comparable age, Joe Daniel Pineda,[6] purportedly from a member of Mr. Pineda's family.[7]

---

[5] Because the sentence for the 2004 drug offense conviction was not imposed during the requisite number of years preceding the instant identity theft and firearm offenses, no criminal history points for it were included in the score that determined Cortez-Balderas' criminal history category. *See* U.S.S.G. §§ 4A1.1(b), 4A.1.2(e). After the district court granted his objections to the probation officer's initial calculations, which did include the 2004 offense, Cortez-Balderas' resulting criminal history score was 3, yielding a criminal history category of II. With a total offense level of 13 and a criminal history category of II, the resulting Guidelines range was 15-21 months' imprisonment.

Had he received two additional criminal history points for the 2004 conviction, Cortez-Balderas' criminal history score would have been 5, yielding a criminal history category of III. With a total offense level of 13 and a criminal history category of III, the resulting Guidelines range would have been 18-24 months' imprisonment.

[6] Cortez-Balderas was born in 1982. According to the factual basis signed by Cortez-Balderas and counsel for the Government, the state identification card bearing another person's name that was found in Cortez-Balderas' residence reflected a 1980 date of birth.

[7] Cortez-Balderas began residing entirely in the United States at the age of 14, and attended high school in McAllen, Texas, until leaving school in 11th grade to work. Mr. Pineda's birth certificate was purchased at some point during Cortez-Balderas' teen-age years. In 2005, Cortez-Balderas moved to New Orleans.

Thereafter, for approximately twenty years, Cortez-Balderas assumed Mr. Pineda's identity, including his name and variations thereof, his date of birth, and his social security number, until his November 9, 2020 arrest revealed Cortez-Balderas' true identity to law enforcement officers. Had Cortez-Balderas lived a law-abiding life and timely satisfied credit obligations following his assumption of Mr. Pineda's identity, the consequences to Mr. Pineda during the ensuing years might have been relatively minor. Unfortunately, however, he did not.

Rather, the record shows that, in 2004, when Cortez-Balderas imported 24.3 kilograms of marijuana into the United States and was arrested at the border, he maintained his false identity such that he, as "Jose Daniel Pineda," *not* "Martin Cortez-Balderas," was convicted of a federal drug crime and sentenced to terms of imprisonment and supervised release. Notably, though Cortez-Balderas could have confessed his true identity at any time during that legal proceeding, while he was in prison, or during his years of supervised release, he did not, thereby avoiding the possibility of being charged with an immigration offense and/or deported.[8] Thus, upon completing his term of imprisonment, Cortez-Balderas, still masquerading as "Joe Daniel Pineda," was able to continue to live and work in the United States.

However, even after serving his sentence for the 2004 drug offense, Cortez-Balderas still did not choose to live "Joe Pineda's" life "on the straight and narrow." Instead, he renewed his state identification cards—as Joe Pineda—in March 2010, August 2013, and April 2018, using them as

---

[8] To the contrary, he went so far as to request documentation from his probation officer, in 2009, reflecting that his "true" name was "Joe Daniel Pineda," as listed in "his" birth certificate, rather than "Jose Daniel Pineda," as it had appeared in the presentence report for his 2004 drug offense conviction.

needed.. The last card—renewed in April 2018—remained in Cortez-Balderas' possession as of his November 9, 2020 arrest for unlawful possession of a firearm. During these interim years, Cortez-Balderas also incurred substantial unsatisfied debt, and engaged in conduct resulting in misdemeanor convictions for traffic violations (including driving while intoxicated), unauthorized use of a movable, simple criminal damage to property, domestic battery, and violation of a protective order—all in some version of the name "Joe Daniel Pineda." Finally, at some time prior to his November 9, 2020 arrest, despite knowing he was legally prohibited from possessing a firearm and thus should consider other safety measures, Cortez-Balderas obtained a pistol to keep in his car for protection. He did so, moreover, while still having a state identification card in Mr. Pineda's name.

At Cortez-Balderas' sentencing hearing, Mr. Pineda detailed the devastating impact that Cortez-Balderas' actions, all taken in some form of Mr. Pineda's name, had had on his quality of life, mental health, employment opportunities, and credit rating. He recounted approximately twenty years of trying to "clear" his name and credit—repeatedly having to respond to bench warrants, deal with bill collectors, and suffer detention by law enforcement officers—because of the criminal and financial records that Cortez-Balderas had amassed in Mr. Pineda's name. In connection with the 2004 drug offense conviction, officers of the United States Marshal's Service came to Mr. Pineda's house in "full gear" to detain him. He also described being pulled from a college classroom, escorted through campus in handcuffs, and detained in a cell for hours until the Marshal's Service confirmed his actual identity. He likewise was detained when border patrol officers checked bus passengers' identification cards. According to Mr. Pineda, "[his] twenties were taken from [him]." And, because of his ongoing fear of arrest or detention, engendered by his numerous encounters with law enforcement and the judicial system that resulted from Cortez-Balderas'

simultaneous use and abuse of his identity, Mr. Pineda forewent getting a driver's license until he was 41 years old.

Notably, at various points during his sentencing hearing, Cortez-Balderas apologized to Mr. Pineda for the harm that his actions had caused, acknowledging his role in causing that harm and offering to do what he could to "clean" Mr. Pineda's name. He also told Mr. Pineda that he had not intended to hurt him, and indicated that he had not realized the hardship that his actions had caused Mr. Pineda.

While the record reflects that the district judge believed that Cortez-Balderas truly was unaware of the full extent of the substantial hardships that his actions had had on almost twenty years of Mr. Pineda's life, it likewise is evident that the court reasonably concluded that Cortez-Balderas could *not* have been entirely ignorant of the considerable risk of collateral damage associated with his conduct. This is particularly true after Cortez-Balderas began accruing criminal convictions and unsatisfied financial obligations, all in Mr. Pineda's name, given the absence of any evidence that Cortez-Balderas did not know that the identity he had assumed belonged to a real, living person. Indeed, though Cortez-Balderas asserts that his having purchased Mr. Pineda's birth certificate from a member of Mr. Pineda's family gave "him no reason to think the owner would be harmed," the opposite inference is equally likely.

Viewed in its entirety, his conduct reveals ongoing and conscious disrespect for the law and the rights of others, worsened by a disregard for the foreseeable negative consequences that his actions have had on others. Unsurprisingly, as revealed by its oral and written reasons, these factors significantly impacted the sentences selected by the district court. The district court's consideration and weighing of such egregious factual history was proper. To turn a blind eye to such persistent disrespect for the law and

the rights of others would be inconceivable. Likewise, the per curiam opinion's omission of these record facts compels me to concur with these additional reasons. Thus, on this record, I agree that Cortez-Balderas' objections to the weight that the district court gave the identity theft offense's victim impact and the circumstances of his 2004 drug offense, in deciding to impose an above-Guidelines sentence for the § 922(g)(1) firearm offense, are unavailing.

The district court's few references to Cortez-Balderas' lack of legal immigration status do not reveal an abuse of sentencing discretion. Although Cortez-Balderas' immigration status was mentioned at some points of the sentencing hearing, nothing in the record suggests that the district court gave it undue weight.  Furthermore, Cortez-Balderas proffered that status as a basis to explain and mitigate his unlawful conduct. That is, during the sentencing hearing, Cortez-Balderas told Mr. Pineda:  "I wish I was born in this country and [] didn't having to do what I did."  He explained that he was "using [Mr. Pineda's] name" . . . "just to work because [he] wasn't born in this country" and "it got out of [his] hands" [in speaking of arrests in Pineda's name]. In any event, the district court's remarks, for the most part, simply emphasized Cortez-Balderas' decisions, whilst living in the United States, to repeatedly engage in unlawful activity that harmed others, rather than endeavoring to live, as much as possible, within the confines of the law.

Balancing the § 3553(a) Sentencing Factors

Finally, Cortez-Balderas contends that the district court made a clear error of judgment in balancing the § 3553(a) sentencing factors, given that his § 922(g)(1) firearm offense lacked any aggravating factors, and that he had obtained a gun to protect himself, not to facilitate a crime. He also emphasizes that, given his total offense level of 13, utilizing the highest possible criminal history category of VI yields a Guidelines range of only 33–

41 months' imprisonment, i.e., approximately half of the 72 months' imprisonment to which he was sentenced.

This assertion of error is likewise not persuasive. The record shows that Cortez-Balderas was able to fully present all of his sentencing arguments, objections, and requests to the district court, that the district court considered them, and that the district court had a reasonable basis for rejecting them. Thus, he essentially asks that we reweigh the § 3553(a) factors in his favor, thereby substituting this court's judgment in place of the district court's. This, we cannot do. *See*, *e.g.*, *Gall*, 552 U.S. at 51 ("fact the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court"); *see also United States v. Hernandez*, 876 F.3d 161, 167 (5th Cir. 2017) (refusing to reweigh sentencing factors and substitute appellate court's judgment for that of the district court); *United States v. Gutierrez*, 635 F.3d 148, 154 (5th Cir. 2011) (deference is owed to the district court's determination of the appropriate sentence based on the § 3553(a) factors).

## III.

For these additional reasons, I concur in the per curiam opinion.