# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2025

Lyle W. Cayce
Clerk

———————

No. 24-20393

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Antonio Dario Osorio-Avelar,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CR-156-1

———————————————————

Before Jones, Graves, *Circuit Judges*, and Rodriguez, *District Judge*.[*]

Per Curiam:[*]

Antonio Dario Osorio-Avelar was sentenced to 375 months of imprisonment and 15 years of supervised release after he pled guilty to sex trafficking a minor. Osorio-Avelar challenges the procedural and substantive reasonableness of his sentence, as well as the special conditions of supervised

———————————

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

release that were imposed without being orally pronounced at sentencing. We AFFIRM the sentence as procedurally and substantively reasonable but VACATE the special conditions and REMAND for the district court to amend the judgment and remove the unpronounced conditions.

## I

Osorio-Avelar brings four challenges, saying the district court (A) imposed a procedurally unreasonable sentence by considering erroneous facts; (B) imposed a substantively unreasonable sentence by giving significant weight to improper factors and improperly balancing the sentencing factors; (C) violated his right to a fair sentencing hearing by considering improper, inflammatory remarks by the Government; and (D) violated his due process rights by imposing special conditions of supervised release that were not orally pronounced. We address them in turn.

## A

Although Osorio-Avelar did not raise his erroneous-facts argument below, "[a] plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention." *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018) (quoting FED. R. CRIM. P. 52(b)).

But for this court to exercise its discretion to address error, three conditions must exist: "First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain— that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights." *Id.* (quoting *Molina-Martinez*, 578 U.S. 189, 194 (2016)). If these conditions are met, "the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up) (quoting *Molina-Martinez*, 578 U.S. at 194).

No. 24-20393

Osorio-Avelar contends that the district court erred by sentencing him "based on two clearly erroneous factual findings." First, "that Mr. Osorio-Avelar had manipulated members of his family." Second, "that Mr. Osorio-Avelar's young age did not impact his decision-making during the time he committed his offense of conviction."

"A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016). After reviewing the record, we conclude that neither determination was clear error.

**1**

The district court's conclusion that Osorio-Avelar manipulated members of his family is plausible given the record. While Osorio-Avelar spotlights the letters and testimony from his family that highlight a "positive relationship with his family," that is not "the record . . . as a whole." *Castro*, 843 F.3d at 612. The district court appropriately balanced the positive things his family had to say against the rest of Osorio-Avelar's actions, including committing several crimes that led him to juvenile detention, continued criminal activity after being released from juvenile detention while residing in his family's home, hiding stolen firearms in his family's home, evading arrest multiple times, and sex trafficking young women while starting a family with his girlfriend. Weighing the evidence of Osorio-Avelar as both upstanding and unscrupulous, the district court reached the plausible conclusion that someone who is a sex trafficker not only manipulated his victims but had managed to do the same to his family, blinding them to his repeated misdeeds. We see no error, much less plain error, in the district court drawing this inference.

*2*

Osorio-Avelar's second erroneous-fact argument—that the district court relied on the "mistaken belief" that his "young age did not impact his decision-making"—similarly fails to indicate any error. Because Osorio-Avelar was nineteen when he committed his crime, he argued, with supporting case law, that brain development continues into the mid-20s, and that youthful offenders are more impulsive, risk-seeking, and susceptible to outside influence.

Despite noting this reality, the district court gave more weight to other parts of Osorio-Avelear's "history and characteristics." 18 U.S.C. § 3553 (a)(1). Specifically, it reasoned that Osorio-Avelar's crime could not be attributed to immaturity because of its gravity, the manipulation and threats involved, and his understanding that he was undertaking serious criminal behavior. The record plausibly supports this; after all, Osorio-Avelar escalated from breaking into cars as a 15-year-old to aggravated robbery, firearm theft, and burglary as a 16-year-old, to sex trafficking and "threatening to beat somebody and take away their lives in prostitution because they're not making [him] money" as a 19-year-old.

Given Osorio-Avelar's years in the carceral system and his "chance to do better," it is not clearly erroneous for the district court to conclude that despite his age, Osorio-Avelar "knew exactly the consequences" yet chose to "continue down this lifestyle." *See United States v. Bolton*, 908 F.3d 75, 97 (5th Cir. 2018) ("While Linda's age and allegedly low chances of recidivism might be relevant considerations, the district court was free to give other § 3553(a) factors more significant weight in imposing her sentence.").

*

"A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Castro*, 843 F.3d at 612. Both of the district court's

4

findings that Osorio-Avelar challenges are plausible in light of the entire record, so they were not clearly erroneous. Thus, Osorio-Avelar's procedural-unreasonableness challenge must fail.

**B**

Second, Osorio-Avelar asserts that the district court imposed a substantively unreasonable sentence by giving significant weight to improper factors and improperly balancing the sentencing factors.

Because he requested a shorter sentence than the one that was imposed, Osorio-Avelar preserved this challenge. *Holguin-Hernandez v. United States*, 589 U.S. 169, 175 (2020). We review a "properly preserved claim of substantive unreasonableness for abuse of discretion." *United States v. Zarco-Beiza*, 24 F.4th 477, 480–81 (5th Cir. 2022).

"Sentences within a properly-calculated guidelines range enjoy a presumption of reasonableness." *United States v. Diaz Sanchez*, 714 F.3d 289, 295 (5th Cir. 2013). "A defendant can rebut that presumption by demonstrating that the sentence (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Fatani*, 125 F.4th 755, 761 (5th Cir. 2025) (cleaned up).

Osorio-Avelar's first attempt to rebut that presumption is a rehashing of his erroneous-fact arguments discussed above. *See ante* at 2–5. As noted, these arguments lack merit.

He argues that "the district court's sentence did not account for factors that should have received significant weight." In Osorio-Avelar's view these factors are his age and "his strong relationships with his mother, father, sister, and infant daughter."

No. 24-20393

At the sentencing hearing, the court noted that it reviewed the attachments to Osorio-Avelar's sentencing memorandum, which included his family support letters. The court also listened to Osorio-Avelar allocute about his youth and how that made him "really immature" and "more risky."

In response, concerning his youth, the court said:

Respectfully, immaturity is stealing a car, immaturity is breaking into a house. It's not putting a gun to someone's head and threatening to kill them if they don't do what you want them to do. It's not threatening to beat up somebody and take away their lives in prostitution because they're not making you money. That's not immaturity. That's criminal—serious criminal behavior.

. . .

Immaturity doesn't cut it for what you've done. It doesn't. You knew what you were doing. You manipulated the people around you to get what you wanted. And then, when you didn't get what you wanted, you threatened them with their lives.

With respect to his family ties, the court said:

And who I really feel sorry for, respectfully, is your family that's sitting out here in the audience.

. . .

You are every parent's nightmare, respectfully. You are a danger to the people around you, to your family members

. . .

And all you can talk about is how you're—you can't see your family and you can't see your daughter. This young lady[, the victim,] is never going to have her life back, ever. It's never going to be the same for her, ever.

. . .

6

And quite frankly, the fact that you're—you have consequences of that conduct is not the Court's concern. Those were the choices that you made.

. . .

I feel sorry for your family, that they've had to go through this. I feel sorry for your daughter because it's not her fault that you're not going to see her for the next 30 years. It's not her fault. You made that decision. And now, there are consequences.

From these excerpts, it is clear that the district court *considered* how Osorio-Avelar's age and his family ties should impact his sentence, but was ultimately unconvinced those circumstances merited a downward departure. Instead, it chose to more heavily weigh "the nature and circumstances of the offense," 18 U.S.C. § 3553(a), the need to "provide just punishment for the offense," and the need for the sentence imposed to protect the public from further crimes, *Id.* at § 3553(a)(2)(A),(C).

The remainder of Osorio-Avelar's substantive-reasonableness argument is that the district court "made a clear error in balancing the sentencing factors." At bottom, Osorio-Avelar wanted the district court to place more weight on his age and family ties. But his claim "amounts to a request that we reweigh the sentencing factors and substitute our judgment for that of the district court, which we will not do." *United States v. Hernandez*, 876 F.3d 161, 167 (5th Cir. 2017). "[I]t is not possible, let alone required" that a district court "give incommensurable factors . . . equal weight. Rather, they must use their judgment to weigh the relative importance of each factor in relation to each particular defendant, with some factors being more important in some cases and other factors more important in others." *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011). Because Osorio-Avelar has not rebutted the presumption that his within-

Guidelines sentence is reasonable, we find that the district court did not abuse its discretion.

## C

Third, Osorio-Avelar asserts that the district court inappropriately considered improper, inflammatory remarks by the Government, thereby violating his right to a fair sentencing hearing. We review this unpreserved challenge for plain error. *Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 405 (5th Cir. 2019).

In its sentencing recommendation, the Government called Osorio-Avelar "evil" and referenced his "depravity." The Government further said that he "will never acquiesce to societal norms." In Osorio-Avelar's view, "[t]hese comments went beyond forceful argument—they were inflammatory statements that exceeded the bounds of fair comment."

"Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Stephens,* 571 F.3d 401, 407–08 (5th Cir. 2009). "This court conducts a two-part analysis of prosecutorial misconduct. First, we consider whether the prosecutor made an improper remark and if so, we look next to see if the remark affected the substantial rights of the defendant." *Bolton*, 908 F.3d at 93 (internal citation omitted).

Assuming that the prosecutor's comments were clearly improper, we still conclude that they did not affect Osorio-Avelar's substantial rights because there is no evidence of prejudice.

In *United States v. Davis*, 609 F.3d 663 (5th Cir. 2010), a criminal defendant brought, *inter alia*, a prosecutorial-misconduct claim based on comments made during closing argument. *Id.* at 686. These comments included repeatedly describing the defendant as "evil" and discussing his

"murderous rampage." *Id.* at 687. We concluded that "there was not inappropriate disparagement" of the defendant, reasoning that "[t]he remarks were drawn from evidence in the record and could be inferred from the evidence the jury heard." *Id.* at 688.

Much like *Davis*, here the prosecutor called Osorio-Avelar "evil," spoke of his "depravity," and said he would "never acquiesce to societal norms." In Osorio-Avelar's view, these "arguments were improper because they seemed aimed at withdrawing from the court some of 'the most central sentencing considerations.'" *Drake v. Kemp*, 762 F.2d 1449, 1460 (11th Cir. 1985).

Putting aside that *Drake* is an out-of-circuit opinion that is distinguishable because it involved misconduct before a jury at the death penalty stage, *Drake* still fails to support Osorio-Avelar. Regardless of the prosecutor's intentions in his sentencing memorandum, there is nothing in the record to indicate that the comments had a prejudicial effect on the district court's analysis of the § 3553(a) sentencing factors or the sentence it imposed.

Osorio-Avelar says that the district court's statement that he is "every parent's nightmare" mirrors the prosecutor calling him evil. But Osorio-Avelar's lengthy criminal record at 19, including his heinous sex trafficking of a minor that included violent threats, could readily allow the district court to reach that conclusion even absent the prosecutor's statement. Osorio-Avelar also says the district court concluded that he knew what he was doing, which echoes the prosecutor saying that he "knew exactly what he was doing." He further notes that the district court's conclusion that his "immaturity doesn't cut it" reflects the prosecutor's language that "[i]t is not immaturity that causes the Defendant to make the choices he has made." But again, the record clearly supports these inferences given Osorio-Avelar's

repeated and escalating crimes despite spending years in the juvenile-detention system.

Given the record support for the district court's determinations, and the district court's application of the relevant § 3553(a) factors, we conclude that the prosecutor's statements about Osorio-Avelar were insufficient to render the proceeding fundamentally unfair or to cast serious doubt on the correctness of the district court's sentencing determination. Accordingly, his due process claim fails.

**D**

Finally, Osorio-Avelar challenges all the special conditions of his supervised release because they were imposed in the written judgment but not orally pronounced at sentencing.

A district court must pronounce any condition of supervised release that is not required by 18 U.S.C. § 3583(d) at sentencing. *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020).

The Government concedes that ten of the special conditions in the written judgment were not pronounced at sentencing and should be excised from the written judgment.[1] That leaves six disputed conditions.

The Government says that the six remaining "special conditions that appear in the written judgment also appear in the district court's standing order, and the conditions in the standing order were imposed orally by the district court." In its view, this means those special conditions were orally pronounced and should thus be reviewed for plain error, not abuse of

---

[1] Osorio-Avelar counts fifteen conditions. The Government counts sixteen. The differentiation seems to be that Osorio-Avelar has combined two special conditions that deal with computer searches. Because the document has sixteen separate conditions, we address sixteen for clarity.

discretion. Osorio-Avelar advances that because he did not have an opportunity to object to these conditions below, we should review for abuse of discretion.

We considered a similar dispute about the appropriate standard of review in *United States v. Baez-Adriano*, 74 F.4th 292, 301 (5th Cir. 2023). There, we noted that "[a] standing order provides advance notice of possible conditions . . . . And the in-court adoption of those conditions is when the defendant can object." *Id.* at 297 (quoting *Diggles*, 957 F.3d at 561). A court's "shorthand reference to its standard conditions of supervision at sentencing is adoption all the same." *Id.* (cleaned up) (quoting *United States v. Vargas*, 23 F.4th 526, 528 (5th Cir. 2022)). Accordingly, we concluded that the "court-wide standing order and the court's oral, shorthand reference to 'standard and mandatory conditions of supervision' gave [the defendant] advance notice of the possible conditions." *Id.* (quoting *United States v. Grogan*, 977 F.3d 348, 352 (5th Cir. 2020)). This made plain error review appropriate. *Id.*

But we differentiated that from the *special* conditions applied "because the alleged error appear[ed] for the first time in the written judgment, such that [the defendant] did not have the opportunity to object in the district court." *Id.* at 298. Because of that crucial distinction, we reviewed the propriety of the special conditions for abuse of discretion. *Id.*

We do the same here. Although the Government is correct that some of the special conditions in the written judgment mirror the standard conditions that the district court referenced at sentencing, the district court only mentioned the *standard* conditions. This failed to give Osorio-Avelar notice that the *special* conditions were also being imposed, thereby stripping him of an opportunity to object, making abuse-of-discretion review

appropriate. Having addressed the appropriate standard of review, we turn to the merits.

"If a term or condition of a sentence in the court's written judgment conflicts with the oral sentence, the oral sentence controls." *Id.* at 302. "The key determination is whether the discrepancy between the oral pronouncement and the written judgment is a conflict or merely an ambiguity that can be resolved by reviewing the rest of the record." *Id.* (quoting *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006)). "A conflict exists when the written judgment 'broadens the restrictions or requirements of supervised release from an oral pronouncement.'" *Id.* (quoting *Mireles*, 471 F.3d at 558).

During sentencing, the district court pronounced *no* special conditions of supervised release. Necessarily, then, the six written special conditions that the Government tries to save are necessarily in conflict with the oral pronouncement that included none.

The Government resists this conclusion by stating that six of the unpronounced special conditions were in the standing general order that the district court referenced while imposing the standard conditions. But that is irrelevant because the district court only named it would impose "the *standard* conditions adopted by [it] under General Order Number 2017-1," without any notice that the special conditions would also be imposed. Insofar as the district court wanted to hold Osorio-Avelar to special conditions, it "must pronounce it to allow for an objection." *Diggles*, 957 F.3d at 559. Not doing so but still imposing the special conditions in the written judgment was an abuse of discretion.

## II

In sum, we conclude that the sentence the district court imposed is not procedurally unreasonable because it was not based on erroneous

No. 24-20393

factfinding; not substantively unreasonable because it did not give weight to improper factors or improperly balance the sentencing factors; and not plainly erroneous because although the district court considered the Government's provocative remarks, there was no prejudice. We accordingly AFFIRM the bulk of the district court's sentence. We, however, VACATE all the unpronounced special conditions included in Osorio-Avelar's written judgment as an abuse of discretion and REMAND for entry of an amended judgment that conforms to the oral pronouncement.